**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
MARGOT LOTH,                                                  :
                                    Plaintiff,               :
                                                              :
                                                              :                   MEMORANDUM
            -against-                                         :                   DECISION
                                                              :                   AND ORDER
THE CITY OF NEW YORK,                                         :
                                                              :                   20 Civ. 9345 (GBD)
                                    Defendant.               :
                                                              :
                                                              :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Margot Loth, an Emergency Medical Technician ("EMT") employed by the New York City Fire Department ("FDNY") brings this action for gender discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. Admin Code 8-107, *et seq.* ("NYCHRL") against Defendant City of New York. (Verified Complaint ("VC"), ECF No. 1, at ¶¶ 62–113.) Defendants move to dismiss the Verified Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. to Dismiss ("Notice of Mot."), ECF No. 16, 1.) Defendants' motion to dismiss is GRANTED.

## I.    FACTUAL BACKGROUND

Plaintiff began working for Defendant as an EMT on February 14, 2011. (VC ¶ 12.)[1] In October 2013, Plaintiff accepted a position as a Hazardous Materials instructor. (*Id.* ¶ 14.) In

---

[1] Unless otherwise noted, the facts are drawn from the Verified Complaint.

February of 2014, Plaintiff began accepting overtime assignments to drive FDNY chiefs. (*Id.* ¶ 16.) In May of 2014, Plaintiff returned to a regular tour on a truck. (VC ¶ 17.) Plaintiff started working at the FDNY Station 47 in Far Rockaway in October 2015. (*Id.* ¶ 23.)

Plaintiff alleges that from 2018 through 2020, Captain Donna Lynn Hannon Tiberi committed various acts of discrimination and retaliation against Plaintiff. In March 2018, Tiberi issued Plaintiff and her male partner a Warned and Admonished notice arising from an unspecified work incident the night before. (VC ¶ 18.) As Plaintiff and her partner left Tiberi's office, Tiberi followed them out of her office and called Plaintiff "disrespectful" and a "terrible person." (Id.)

Next, in July 2018, Plaintiff was featured in the FDNY Calendar of Heroes for 2019. (VC ¶ 19.) After this, "on numerous" unspecified occasions, Tiberi referred to Plaintiff as "calendar girl" in a disparaging manner to unspecified FDNY members. (*Id.*)

Several months later, in November 4, 2018, Tiberi prevented Plaintiff from receiving overtime pay earned while driving a lieutenant at the New York City Marathon and issued her a command discipline for receiving a tour change after working overtime at an event. (VC ¶ 21-22.) Plaintiff was directed to appear for a command discipline session with Tiberi and her union representative two days later to resolve the dispute. (*Id.*) The parties were unable to agree on a resolution at that session. (*Id.*) Shortly after that meeting, the shoelaces on Plaintiff's sneakers, which she kept outside her locker at the Far Rockaway FDNY Station, were vandalized. (*Id.* ¶ 23.) Plaintiff alleges that according to the schedule for that day, Tiberi was the only other woman on duty at the station the day her sneakers were vandalized. (*Id.*)

Plaintiff next alleges that on December 2, 2018, Tiberi issued Plaintiff and her partner, whose gender is not indicated, command discipline notices after they returned to the station approximately fifteen minutes late after a tour. (VC ¶ 60(a)). The following year, on December

3, 2019, two male employees did not receive command discipline when they were twenty minutes late back to the station. (*Id.*) Plaintiff was referred to the Bureau of Investigations and Trials ("BITS") for an incident occurring on December 12, 2018 wherein Plaintiff was over thirty minutes late to return from a shift, was unavailable by radio, and for which two patrols were sent looking for her. (Declaration of Donald C. Sullivan, ECF No. 17, Ex. A, 3 ("Charging Document").)[2]

Around November 2018, FDNY Paramedic Carin Rosado asked Plaintiff to act as a witness in an FDNY Equal Opportunity case that Rosado filed against Tiberi. (VC ¶ 28.) Plaintiff agreed, and on December 19, 2018, she reported for an interview regarding Rosado's complaint. (*Id.*) Per FDNY policy, employees are entitled to four hours of overtime for EEO interview. (*Id.*) Plaintiff submitted a request for overtime in connection with this event. (*Id.*) Tiberi had the authority to review, accept, and decline Plaintiff's timesheet and overtime requests. (*Id.*) Several months later, on August 30, 2019, Plaintiff filed her own internal EEO complaint against Tiberi. (*Id.* ¶ 44.) Lieutenant Mueller was required to provide a witness statement as part of the investigation. (*Id.*)

Shortly after the interview, on December 22, 2018, Tiberi denied Plaintiff's request for time off on New Year's Eve and for her annual leave. (VC ¶ 29.) Plaintiff involved her union and the dispute eventually reached FDNY Chief Colon, who delegated authority to approve Plaintiff's requested leave to FDNY Division Chief Christine Mazzola. (*Id.*) Plaintiff then took her requested annual leave. (*Id.* ¶ 38.)

On January 6, 2019, Tiberi issued an disciplinary charge against Plaintiff for being absent without official leave ("AWOL") for failing to cancel an overtime shift. (VC ¶ 33.) The charge

---

[2] Defendant contends that the December 2, 2018 incident described by Plaintiff in Paragraph 60(c) of the Verified Complaint is the same as the December 12, 2018 incident described on Page 3 of the BITS Charging Document. (Charging Document 3)

was later dismissed. (*Id.* ¶ 53.)  Conversely, on October 20, 2019, Lieutenant Chris Orlik was a "no call, no show for his tour 2 regular shift," but he was never reprimanded or given any formal charges. (VC ¶ 60(c).)

In January 2019, Chief Mazzola directed Chief Foley to avoid using Plaintiff for discretionary overtime assignments. (*Id.* ¶ 36.)  Chief Foley and another Division Chief avoided using Plaintiff for driving assignments for approximately three to four months. As a result, Plaintiff lost approximately 60 hours of overtime opportunities. (VC ¶ 36.)

After Plaintiff returned from her annual leave, she discussed her employee evaluation with Lieutenant Sean Josten ("Josten"), who authored it. (VC ¶ 56.)  Tiberi received a draft of Plaintiff's evaluation and stated that she possessed several statements against Plaintiff regarding her job performance and behavior. (*Id.* ¶ 39.)  Pursuant to FDNY regulation, Plaintiff was entitled to a new evaluation within 90 days of her previous evaluation. (*Id.* ¶ 40.)  Plaintiff received her 2018 employee evaluation late on January 9, 2020 after Chief Gilligan ordered Tiberi to issue it. (*Id.* ¶ 56.)

In June 2019, Plaintiff passed her 'Medic Screening.' (VC ¶ 42.)  This made her eligible to take specific medic class available in September 2019 and February 2020, which would allow Plaintiff to achieve a higher salary or a title change. (*Id.*)  Pursuant to FDNY policy, Plaintiff could not take the required classes if she had an open BITS cases. (*Id.* ¶ 43)

On September 19, 2019, Plaintiff engaged in a meeting regarding her BITS case but could not reach an agreement due to the steep nature of Tiberi's requested punishments. (VC ¶ 46.)  On December 19, 2019, Plaintiff attended another BITS investigation meeting. (VC ¶ 53.)  At that meeting, Plaintiff executed a stipulation agreement ("Stipulation Agreement") wherein Plaintiff agreed to accept the loss of three days' pay and admit guilt with regards to one AWOL charge and

one charge of Radio Unavailability in order to resolve the outstanding disciplinary charges against her. (Declaration of Donald C. Sullivan, ECF No. 17, Ex. B ("Stipulation Agreement"), 1.) Plaintiff also waived her right to sue under the Stipulation Agreement. (*Id.*) Plaintiff alleges that she executed the Stipulation Agreement under duress. (*Id.*)

The next discriminatory act occurred on September 30, 2019, when Plaintiff clocked into the station 20 minutes late and Tiberi docked 51 minutes from Plaintiff's pay for lateness. (VC ¶ 47.) Plaintiff also alleges that in November 2019, Defendant posted an available hazardous materials instructor position, to which Plaintiff was unable to apply due to the absence of her 2018 evaluation. (VC ¶ 48.) Plaintiff alleges that she previously held this position in 2013-2014 and was otherwise entirely qualified and able to hold this position. (*Id.*)

On January 7, 2020, Plaintiff was accepted into the medic training program. (VC ¶ 57.) Plaintiff began the medic training program on February 3, 2020. (*Id.* ¶ 58.)

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss, courts must "accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (citations omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678. Furthermore, "[w]here a complaint pleads facts that are 'merely

consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of 'entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation omitted); *Twombly*, 550 U.S. at 570 ("Because the Plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed"). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. 544, 558 (2007).

In evaluating a complaint, the district court first reviews a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.* The issue for the court to decide is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). For claims under Title VII, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Instead, "[t]hey need only give plausible support to a minimal inference of discriminatory motivation." *Id.*

## III.   PLAINTIFF'S TITLE VII CLAIMS ARE DISMISSED

### A.  Plaintiff's Allegations Occurring Outside the Statutory Period are Not Actionable

Defendant contends that Plaintiff's claims based on acts occurring before February 13, 2019 are time barred because Plaintiff filed her EEOC claim on December 12, 2019. (Defendant's Memorandum of Law in Support of Motion to Dismiss the Verified Complaint ("Def.'s Brief"), ECF No. 18, 13.) In opposition, Plaintiff contends her claims are timely under the continuing

violation doctrine because the "allegations considered as a whole indicate a systematic practice by Defendant." (Plaintiff's Memorandum in Opposition ("Pl.'s Opp."), ECF No. 21, 10.)  In reply, Defendant argues that the acts occurring prior to the statutory period are discrete and do not implicate the continuing violation doctrine. (Defendant's Reply Brief ("Reply"), ECF No. 22, 2.)

A claim under Title VII must be filed "within three hundred days after the alleged unlawful employment practice . . . [.]" 42 U.S.C.A. § 2000e-5.  Where the adverse employment decision giving rise to discriminatory or retaliatory conduct "constitutes a separable actionable 'unlawful employment practice,'" the act is discrete. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002).  A discrete discriminatory or retaliatory act occurs on the day that it happened, regardless of ongoing effects. *Id.* at 110.  Discrete acts occurring outside the statutory period "are untimely [] and no longer actionable." *Morgan*, 536 U.S. at 115.  However, untimely acts of discrimination may be used as background evidence in support of a timely claim for discrimination or retaliation. *Id.* 113.

The continuing violations doctrine represents an exception to the statute of limitations period for claims under Title VII. *Washington v. County at Rockland*, 373 F.3d 310, 317 (2d. Cir. 2004).  A continuing violation is "a series of separate acts that collectively constitute 'one unlawful employment practice.'" *Morgan*, 536 U.S. at 103 (citation omitted).  Under the doctrine, when "a plaintiff has experienced a continuous practice and policy of discrimination ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington*, 373 F.3d at 317.  To show that a practice is a continuing violation, plaintiff must present "proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination [that were] permitted by the employer to continue unremedied

for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

The Verified Complaint alleges eight discriminatory acts occurring prior to February 13, 2019. Specifically, Plaintiff alleges that: (1) on March 2018, Tiberi called Plaintiff "disrespectful" and a "terrible person," (VC¶ 19); (2) on November 4, 2018, Tiberi issued Plaintiff without pay and command discipline notices, (*id.* ¶¶ 21-22); (4) at some time in November 2018, Tiberi vandalized Plaintiff's shoes, (*id.* ¶ 23.); (5) "on numerous occasions" after July 2018, Tiberi referred to Plaintiff as "calendar girl to other FDNY members" in "a disparaging manner," (*id.* ¶ 19); (5) in early December 2018, Plaintiff received a warning that if she was late again she would receive a BITS case, (*id.* ¶ 26); (6) on December 2, 2018, Tiberi issued Plaintiff a command discipline, (*id.* ¶ 60(c)); (7) on December 12, 2018, Tiberi denied Plaintiff's requested time off for annual leave, (*id.* ¶ 29); and (8) in January 2019, Chief Mazzola "sternly asked Foley to avoid using Ms. Loth for future [discretionary overtime driving] assignments," (*id.* ¶ 36).

The Verified Complaint does not contain any allegations identifying a policy or practice tying Plaintiff's untimely discrimination allegations to her timely allegations, nor do the allegations describe continuing discriminatory or retaliatory acts. Plaintiff argues that her untimely claims, which relate to disciplinary charges, denial of vacation days, denial of opportunities to earn overtime pay, and disparaging remarks from Tiberi, and her timely claims should be "considered as a whole" and together "indicate a systematic practice by Defendant." (Pl.'s Opp. 10.) However, Plaintiff fails to present "proof of specific ongoing discriminatory policies or practices," nor does Plaintiff identify "specific and related instances of discrimination [we]re permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994).

Instead, the discriminatory acts alleged are each separate and independently actionable under Title VII. *Washington*, 373 F.3d at 318 ("decision to file disciplinary charges against plaintiff . . . is clearly a single act, discrete in its nature"). "A series of separate acts [cannot] be characterized as an ongoing policy . . . sufficient to toll the applicable statute of limitations." *Id.* As Plaintiff has only alleged discrete acts of discrimination and has failed to identify any continuing discriminatory policy of practice, the continuing violation doctrine does not apply. Plaintiff's allegations occurring outside the statutory period are time barred and not actionable for the purposes of Plaintiff's Title VII claims.

### B. Plaintiff Waived Right to Sue for Disciplinary Action Resolved by December 2019 Settlement Agreement

Defendant contends that Plaintiff's claims based on disciplinary charges resolved as part of the Stipulation Agreement are not actionable because Plaintiff admitted guilt, accepted discipline, and waived the right to sue regarding those charges. (Def.'s Brief. 13-14.) In opposition, Plaintiff asserts that she executed the agreement under duress, therefore this Court should not enforce the waiver of her right to sue on the disciplinary charges. (Pl.'s Opp. 11.) In reply, Defendant argues that Plaintiff's defense of duress fails because the Verified Complaint does not plead the elements of duress, and Plaintiff did not repudiate the agreement until the instant motion to dismiss. (Reply 4-5.)

Under New York law, a waiver of the right to sue an employer is enforceable if it is executed knowingly. *Miller v. Coughlin*, 59 N.Y.2d 490, 494 (1983) If the waiver is knowing and voluntary, an employee may waive their right to sue an employer under Title VII as part of a settlement of disciplinary charges against the employee. *Constantin v. New York City Fire Dep't*, ECF No. 06 Civ. 04631 (GBD) (THK), 2009 WL 3053851, at *24 (S.D.N.Y. Sept. 22, 2009) (*citing Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d

Cir. 1998)). However, where a waiver is not voluntary, such as in the case of economic duress, the waiver may be invalidated. *Id.* "To show that a settlement agreement should be invalidated on the grounds of economic duress, a plaintiff must allege a wrongful threat that precluded the exercise of the plaintiff's free will." *Nikci v. Quality Bldg. Servs.*, 995 F. Supp. 2d 240, 249 (S.D.N.Y. 2014) (*citing Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir.2011)). Plaintiff must also allege that "circumstances permitted no other alternative" to execution of the agreement. *Frumkin v. Int'l Bus. Machines Corp.*, 801 F. Supp. 1029, 1044 (S.D.N.Y. 1992).

The Verified Complaint alleges, in relevant part, that on December 19, 2019 Plaintiff attended a BITS investigation meeting. (VC ¶ 53.) At the meeting, the parties discussed the open BITS cases against Plaintiff. (*Id.* ¶ 53.) The disciplinary charges discussed included: (1) Plaintiff's failure to report for duty on November 4, 2018; (2) Plaintiff's failure to monitor radio frequency while on tour with her partner on December 12, 2018, failing to return to the station on time at the end of her tour, and being found by other crew members sent out to look for Plaintiff "in a reclined position"; and (3) Plaintiff's failure to cancel or report for a prescheduled overtime shift on January 6, 2019. (Charging Document 3.) To resolve the open BITS cases, Plaintiff "signed a stipulation to have three days of annual leave removed to have her AWOL charge from January 6, 2019 charge dropped and proceed with her progression into medic school." (*Id.*) The agreement also included language waiving Plaintiff's right to sue regarding the charges resolved by the agreement, and language stating that the agreement had been entered into "knowingly, intentionally, without coercion, duress or undue influence…[.]" (Stipulation Agreement). The agreement was signed by Plaintiff and Union Representative Michael Greco. (Charging Document 3.) The Verified

Complaint alleges that Plaintiff "acknowledged claims [against her] only under the duress of the new program enrollment period approaching in February 2020." (VC ¶ 53.)

The Verified Complaint does not plausibly allege that Plaintiff was unable to exercise her free will with regards to the Stipulation Agreement, or that the circumstances permitted no other alternative to executing the agreement. The Verified Complaint's sole allegation regarding Plaintiff's duress claim is that she "acknowledged these claims only under the duress of the new program enrollment period approaching in February 2020." (VC ¶ 53.) However, Plaintiff has not alleged any facts that would permit this Court to infer that Plaintiff had "no other alternative" to executing the Stipulation Agreement. *Nikci*, 995 F. Supp. 2d at 250 (the complaint's allegations "are insufficient to establish duress because they do not demonstrate how [defendant's] conduct in any way precluded [plaintiff] from exercising his free will to decline the Settlement Agreement."). Nor has Plaintiff plausibly alleged that Defendant exerted a "wrongful threat" on Plaintiff in order to secure her signature. *Brewer v. GEM Indus.*, 2015 U.S. Dist. LEXIS 21534, at *9-10 (N.D.N.Y. Feb. 24, 2015) (waiver of discrimination claims is valid because conclusory claims of duress insufficient to overcome enforceability of agreement). Additionally, as the Stipulation Agreement shows, Plaintiff was accompanied by a union representative at the December 19, 2019 meeting. *Culmone-Simeti v New York City Dep't of Educ.*, 2019 U.S. Dist. LEXIS 96174, at *9-11 (S.D.N.Y. June 7, 2019) (rejecting duress defense where Plaintiff was represented at settlement meeting).

Finally, Plaintiff made no attempt to repudiate the Stipulation Agreement until she filed her Verified Complaint. For over a year, Plaintiff enjoyed the benefits of resolving her bits cases, including being able to join in a medic class in February 2020, undercutting her claim that she executed the Stipulation Agreement under duress. *See Long v. Corning Inc.*, 2020 U.S. Dist.

LEXIS 55403, at *15 ("that plaintiff did not repudiate the agreement at any time in the seven-day period post-signing is fatal to his duress allegation.") (citing *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001); *Cater v. New York*, 2019 U.S. Dist. LEXIS 17780, at *14 (S.D.N.Y. Jan. 30, 2019) (for a contract to be voided on duress grounds, "a party must 'promptly repudiate the contract' or else 'be deemed to have ratified it.'") (citing *VKK Corp.*, 244 F.3d at 122-23).

As Plaintiff has failed to plausibly allege a claim of duress in connection with the Stipulation Agreement, that agreement, and Plaintiff's waiver to sue on the disciplinary charges resolved by that agreement, is enforceable. Accordingly, Plaintiff's allegations "arising from the Notice of Charge, the acts, the events and circumstances giving rise to the Notice of Charge, and the implementation of any provision of the Stipulation and Agreement" are not actionable. (Stipulation Agreement 1.)

## C. Plaintiff Fails to State a Claim for Gender Discrimination under Title VII

Defendant contends that Plaintiff fails to state a claim for gender discrimination because the Verified Complaint does not plausibly plead that Plaintiff suffered adverse employment action or that Defendant exhibited discriminatory intent towards Plaintiff. (Def.'s Brief 16-17.) In response, Plaintiff argues that her inability to enroll in medic classes available in September 2019 and the denial of overtime assignments constitute adverse employment action. (Pl.'s Opp. 14-15.) Plaintiff also asserts that the Verified Complaint has sufficiently alleged discriminatory intent based on instances of disparate treatment. (Pl.'s Opp. 18.) In reply, Defendant argues that Plaintiff's allegations fail to show that delayed issuance of her performance evaluation materially altered her working conditions. (Reply 7.) Defendant also argues that Plaintiff has failed to show

that she was similarly situated with the male colleagues with whom she wishes to compare herself, therefore she has not established discriminatory intent. (Reply 8.)

Under Title VII, it is "an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Discrimination claims brought under Title VII are analyzed under the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

To state a claim for discrimination under Title VII "a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *See Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). [A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that [(1)] the plaintiff is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Id.*

Here, the Verified Complaint fails to plausibly allege that Plaintiff suffered adverse employment action or that Defendant was motivated by discriminatory intent.

1. Plaintiff Has Not Plausibly Plead 'Adverse Employment Action'

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85. To constitute

an adverse employment action, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 85. An employment action is materially adverse if it is "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 286 (S.D.N.Y. 2020). Employment action that causes "the deprivation of some tangible job benefits such as compensation, terms, conditions, or privileges of employment" is material. *Id.* Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).

Plaintiff contends that she suffered materially adverse changes in the terms and conditions of her employment based on several incidents from 2018 and 2019. Specifically, she alleges that (1) on March 2018, Tiberi yelled at Plaintiff, calling her "disrespectful and "a terrible person," (VC ¶ 18); (2) on December 2, 2018, Tiberi filed an AWOL charge against Plaintiff for being unavailable by radio and failing to return to the station after her tour ended, (*id.* ¶ 60(c)); (3) on January 6, 2019, Tiberi opened a second AWOL charge against Plaintiff for failing to cancel an overtime shift, (*id.* ¶ 60(b)); (4) Chief Mazzola "sternly asked" FDNY Chief Folely to avoid using Plaintiff for discretionary driving assignments, (*id.* ¶ 36); (5) Tiberi delayed issuance of Plaintiff's employee evaluation for one year, even though FDNY policy stated that Plaintiff was entitled to a new evaluation within 90 days of her previous evaluation, (*id.* ¶ 39); (6) Tiberi opened an investigation, claiming that Plaintiff had broken into Tiberi's office, (*id.* ¶ 43)[3]; (7) Plaintiff was

---

[3] Plaintiff's allegation regarding Tiberi's comments to her on March 2018 is untimely and not actionable for the purposes of Plaintiff's claim under Title VII. *Morgan*, 536 U.S. at 115. Moreover, name calling, without more, is not a materially adverse employment action. *Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 162 (E.D.N.Y. 2020) (dismissing discrimination claim where plaintiff's allegations

unable to apply for a position for hazardous materials instructor in November 2019 due to the absence of her 2018 employee evaluation, (VC ¶ 48); and (8) in July 2019, Tiberi issued Plaintiff a command discipline for returning to the station on available status with an hour and a half left on their tour, (*id.* ¶ 60(a)).

The allegations plead do not show that the terms and conditions of her employment materially changed based on discriminatory acts alleged.  With regards to Plaintiff's delayed employee evaluation, Plaintiff contends that it had a materially adverse impact on the terms and condition of her employment because it prevented her from taking the medic class in September 2019, which frustrated her career growth.  (Pl.'s Opp. 4.)  However, as the Verified Complaint reflects, Plaintiff was "ineligible to take medic classes so long as the [] BITS cases remained open" against her.  (VC ¶ 43.)  As these BITS cases, including the ones for which she acknowledged guilt, were not resolved until the December 19, 2019 meeting, Plaintiff was not eligible to take the September medic class and the lack of her evaluation could not have caused her any deprivation of a tangible job benefit.  *Torre*, 493 F. Supp. 3d at 286.  Plaintiff also alleges that the lack of an employee evaluation prevented her from applying for a position as a hazardous materials instructor, which Plaintiff "previously held [] in 2013-2014 and was otherwise entirely qualified and able to hold []."  (VC ¶ 48.)  However, denial of transfer is not a materially adverse employment condition.  *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (discrimination claim for failure to transfer dismissed because failure to transfer does not "constitute[] an adverse employment action").  Furthermore, Plaintiff fails to allege that she had

---

of reprimands and name calling did not alter the terms and conditions of her employment).  Similarly, Plaintiff's allegation that Tiberi filed frivolous BITS against her on December 2, 2018 and January 2019 is not actionable, both on the grounds that they are time-barred and because Plaintiff waived her right to sue on these charges in the December 2019 Stipulation and Agreement. (Stipulation Agreement 3.)  Even if it were actionable, however, as noted above, disciplinary charges do not, as a matter of law, constitute a materially adverse change in the terms and conditions of an employee's employment.

any interest in, or made any attempt to pursue the subject position, which the employer prevented. As such, Plaintiff cannot show the inability to transfer was a material adverse change to the terms and conditions of Plaintiff's employment.

Regarding the "frivolous" disciplinary charges that Tiberi filed against Plaintiff, Plaintiff contends that they "delayed and denied" Plaintiff "the opportunity to enroll in medic classes available in September 2019." (Pl.'s Opp. 14). First, Plaintiff cannot sue based on the disciplinary charges outside the statutory period, both on the grounds that they are untimely, and because Plaintiff waived her right to sue on those actions.   (Charging Document; *infra* III.A.)  While Plaintiff may still allege that she suffered material adverse action as a result of Tiberi issuing her a disciplinary charge in July 2019, Plaintiff has failed to articulate how this charge caused a materially adverse change in her employment conditions.   Moreover, as a matter of law, an "employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." *Joseph v. Levitt*, 465 F.3d 87, 91 (2d Cir. 2006); *Beharry v. City of New York*, ECF No. 18 Civ. 2042 (AJN), 2020 WL 6135147, at *8 (S.D.N.Y. Oct. 19, 2020) (claim dismissed where plaintiff fails to show that various command disciplines denied him opportunities for professional growth). As such, Plaintiff has not shown that the disciplinary charges filed against her led to a material adverse change in the terms and conditions of her employment.

Finally, Plaintiff asserts that following Chief Mazzola's directive to Chief Folely, Chiefs Folely and Basso avoided using Plaintiff for driving assignments for "approximately three to four months" which caused Plaintiff to lose "approximately 60 hours of overtime."   (VC ¶ 36.) Plaintiff's allegation, which concerns statements Chief Mazzola made to Folely in January 2019, are untimely.   (*Infra* III.A.)   Moreover, even if Plaintiff's claim were timely, it would be

insufficient to show material adverse change because Plaintiff has not alleged that she, at any point, requested overtime from Chiefs Folely or Basso during their three to four month abstention, and was denied overtime. *Turley v. ISG Lackawanna, Inc.*, 803 F. Supp. 2d 217, 236 (W.D.N.Y. 2011) (no materially adverse employment action found where plaintiff "does not identify any instance where he was denied requested overtime work so that it could be given to others"); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 218 (E.D.N.Y. 2014) (plaintiff's bare allegations that she would have been denied overtime if she had applied is insufficient to establish adverse employment action). As such, Plaintiff has not shown that lack of overtime was a materially adverse change to the terms and conditions of her employment.

Accordingly, Plaintiff has failed to plead adverse employment action and her claim for gender discrimination under Title VII fails.

2. Plaintiff Fails to Plausibly Plead an Inference of Discrimination.

"An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). "Where a remark is "ambiguous" as to whether it "reflects discriminatory animus" it is not sufficient to support an inference of discrimination." *Brenner v. City of New York Dep't of Educ.*, 132 F. Supp. 3d 407, 420 (E.D.N.Y. 2015), aff'd, 659 F. App'x 52 (2d Cir. 2016). Furthermore, "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015).

To "show[ ] that the employer treated [her] less favorably than a similarly situated employee outside [her] protected group ... [plaintiff] must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). To determine whether plaintiff has plead allegations that she is similarly situated with the purported comparators, courts consider "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer-imposed discipline was of comparable seriousness. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.*

Here, the Verified Complaint alleges that after Plaintiff was featured in FDNY's 2019 Calendar of Heroes in July 2018, "Tiberi on numerous occasions referred to [Plaintiff] as a "calendar girl" to other FDNY members in a disparaging manner." (VC ¶ 19.)

The Verified Complaint also alleges that Plaintiff was treated less favorably than similarly situated colleagues. Specifically, in March 2018, after issuing a warned and admonished notice to Plaintiff and her male partner, "Tiberi followed [Plaintiff] out of her office, screaming that [Plaintiff] was 'disrespectful' and a 'terrible person' ... [but that] Tiberi launched no such attack on [Plaintiff's male Partner] Perlzweig." (VC ¶ 18.) The Verified Complaint also alleges that on December 2, 2018, Plaintiff "returned to the station approximately fifteen minutes late" and that both she and her partner (gender unspecified) were "issued a CD." (VC ¶ 60(c).) Conversely, on December 3, 2019, "two gentlemen" returned twenty minutes late from a tour, but they "did not receive any reprimands or CDs for their actions." (*Id.*) The Verified Complaint further alleges

that "Tiberi levied an AWOL charge against [Plaintiff] on January 6, 2019 due to [Plaintiff's] lieutenant's failure to remove [Plaintiff] from an overtime shift." "On that date, [Plaintiff] notified her lieutenant she was cancelling an overtime shift . . . [but] the overtime shift was never cancelled. . . [.]" (VC ¶ 60b). "Conversely, on October 20, 2019, Lieutenant Chris Orlik was a no call, no show for his tour 2 regular shift . . . [but] [h]e was never reprimanded or given any formal charges for being absent without leave." (*Id.*) The Verified Complaint also alleges that in July 2019, after "return[ing] to the station on available status with an hour and a half left on their tour" Tiberi required Plaintiff and her male partner to "write statements about why they were [code available status] . . .for such a long time." (VC ¶ 60(a)). Tiberi issued Plaintiff's male partner "a warned and admonished notice" while "Tiberi issued [Plaintiff] a CD based on her report." (*Id.*)

The Verified Complaint contains no allegations that the employer made remarks that could be viewed as having a discriminatory animus, or that Plaintiff and her purported comparators engaged in comparable conduct and were subject to the same standard of performance and discipline. With regards to the "calendar girl" moniker, Plaintiff argues that Tiberi's "inherent reference to [Plaintiff's] gender" and the fact that the comment was used in a "disparaging" manner, is sufficient to give rise to an inference of discrimination. (Pl.'s Opp. 19.) However, the mere fact that Plaintiff's gender was mentioned is insufficient to establish an inference of discrimination. *See e.g., Brenner*, 132 F. Supp. 3d at 420 (references to plaintiff's religion insufficient to support inference of discriminatory motive); *Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 163 (E.D.N.Y. 2020) (dismissing claim for gender discrimination where absent allegations that "Defendant made any comments that might suggest that gender played a role in his denial of training opportunities or the imposition of stringent reporting requirements"). Similarly, Plaintiff's subjective impression of Tiberi's state of mind when she used the ambiguous

phrase does not support an inference of discrimination. *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[A] Plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.")  Moreover, Plaintiff has failed to allege that the remark was tied to any adverse employment action. *Brodt v. City of New York*, 4 F. Supp. 3d 562, 569 (S.D.N.Y. 2014) (rude or derogatory comments regarding plaintiff's religion did not give rise to inference of "discriminatory motivation in defendant's failure to offer a permanent position or [plaintiff's] later discharge").  Therefore, Plaintiff has failed to plausibly allege that Tiberi's reference to Plaintiff as "calendar girl" supports an inference of discriminatory animus.

Plaintiff also argues that Tiberi's "simultaneous favorable treatment of male comparators and mistreatment of female comparators" supports and inference of discrimination.  (Pl.'s Opp. 11.) However, with regards to the first incident, there is no basis to conclude that Plaintiff received less favorable treatment due to her gender because, notwithstanding that she seeks to compare herself to two gentlemen, Plaintiff has failed to allege whether her partner was female or male. (VC ¶ 60(a).) *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998) (no inference of discrimination where members of the non-protected group were treated equally or less favorably than other members).  With regards to the second incident, on October 20, 2019, Plaintiff has not alleged that she had the same title as the employee who was late since he was a Lieutenant and cannot reasonably be inferred to have the same responsibilities and duties as Plaintiff. *Iazzetti v. Town of Tuxedo*, ECF No. 18 Civ. 6200 (NSR), 2020 WL 4340872, at *9 (S.D.N.Y. July 27, 2020) (dismissing discrimination claim where plaintiff failed to plead the "infractions were identical in number and nature to [plaintiff's], whether they also held the same title [], and whether they reported to the same individuals as [plaintiff]"); *Moultrie v. Carver*

*Found.*, 669 F. App'x 25, 26 (2d Cir. 2016) (affirming dismissal of claim where plaintiff "alleged that two of the three employees she identified were employed in different positions than hers").

Lastly, Plaintiff argues that she was disciplined more harshly than her male partner by her female supervisor following a tour shift in July 2019 in which Plaintiff and her partner were both code status "97" for an hour and a half. However, Plaintiff's allegation states that Tiberi instructed both parties to write statements regarding their code status, and that "Tiberi issued [Plaintiff] a CD based on [Plaintiff's] report," not based on Plaintiff being code status "97" for an hour and a half. (VC ¶ 60(a).) *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (disparate treatment not shown where plaintiff fails to allege facts demonstrating that comparators were treated differently). Therefore, Plaintiff has not plausibly alleged that the discipline received was based on the same conduct.

As Plaintiff has failed to plead factual allegations showing that she experienced adverse employment action that occurred under circumstances giving rise to an inference of discrimination, Plaintiff has failed to state a claim for gender discrimination under Title VII.

## D. Plaintiff Fails to State a Claim for Retaliation under Title VII

Defendant contends that Plaintiff's retaliation claim should be dismissed because she fails to allege that (1) the employees who retaliated against her had knowledge of her protected activity, (2) Plaintiff suffered adverse employment action; and (3) plaintiff suffered employment action because of the protected activity. (Def.'s Brief 23-25.) In opposition, Plaintiff argues that her participation as a witness in Rosado's EEO complaint against Tiberi in December 2018, and Plaintiff's own complaint against Tiberi in August 2019, establishes that Defendant had knowledge of Plaintiff's protected activity. (Pl.'s Opp. 21.) Plaintiff also argues that the delay of her employee evaluation was an adverse employment action, and that the temporal proximity between

the protected activity and her adverse action sufficiently pleads a causal connection. (*Id.* 21-22.) In reply, Defendant argues that Plaintiff's claim fails because she does not to plead that Chief Mazzola or Tiberi had actual knowledge of Plaintiff's protected activity prior to engaging in the alleged retaliation, and because Plaintiff engaged in protected activity after the alleged adverse action had already started. (Reply 10.)

To demonstrate a prima facie case of retaliation, a plaintiff must plausibly allege: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)). The definition of adverse action, for retaliation purposes, is different from the way that phrase is defined for discrimination claims. For Title VII retaliation claims, the employee must show' an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *See Burlington Nothern & Santa Fe R. Co. v. White*, 548 U.S 53, 57 (2006).

The Verified Complaint alleges, in relevant part, that on December 19, 2018, Plaintiff acted as a witness for FDNY Paramedic Carin Rosado in an EEO complaint against Tiberi. (VC ¶ 20.) FDNY policy permits employees to use four hours of overtime for EEO interviews. (*Id.*) Plaintiff submitted a request for overtime in connection with her interview for Rosado. (*Id.*) Tiberi had the authority to review, accept, and decline Plaintiff's timesheet and overtime requests. (VC ¶ 28.) The Verified Complaint also alleges that on December 22, 2018, Tiberi denied Plaintiff's request for her annual leave. (VC ¶ 29.)

The Verified Complaint also alleges that on the same day Mazzola granted Plaintiff's request for leave, Plaintiff received a message from FDNY Chief James Folely stating that he ran into Mazzola that morning, and she sternly asked Folely to avoid using her for future assignments. (Id. ¶¶ 36.) Foley, along with another FDNY Chief, Chief Basso, avoided using Plaintiff for future assignment for approximately three to four months, resulting in a loss of approximately 60 hours of overtime opportunities.

The Verified Complaint further alleges that after she returned from her annual leave, Plaintiff spoke to Lieutenant Sean Josten, who had written Plaintiff's 2018 evaluation. (VC ¶ 39.) After he gave Tiberi Plaintiff's review, Tiberi stated that she possessed several statements against Plaintiff regarding her job performance and behavior. (*Id.*) Pursuant to FDNY regulation, Plaintiff was entitled to a new evaluation within 90 days of her previous evaluation. (*Id.* ¶ 40.) On August 30, 2019, Plaintiff filed her own EEO complaint against Tiberi. (*Id.* ¶ 44.) During the investigation, "Lieutenant Mueller was required to provide a witness statement by Defendant's EEO office." (*Id.*) Tiberi issued Plaintiff's 2018 employee evaluation on January 9, 2020, after Chief Gilligan ordered Tiberi to issue the evaluation. (*Id.* ¶ 56.)

The Verified Complaint contains no allegations that Chief Mazzola had knowledge of Plaintiff's December 19, 2018 protected activity, nor does it plausibly plead that Tiberi knew that Plaintiff engaged in protected activity prior to their subject acts. In her opposition, Plaintiff argues that "Defendants' [sic] commencement of EEOC investigation with [Plaintiff's] involvement illustrates Defendant's knowledge of [Plaintiff's] complaints." (Pl.'s Opp. at 21.) However, even if Defendant did have knowledge of Plaintiff's protected activity, Plaintiff has failed to plead any factual allegations imputing Defendant's knowledge to Tiberi or Mazzola. *Diaz v. City Univ. of N.Y*, ECF No. 13 Civ. 2038 (PAC) (MHD), 2015 WL 5577905, at *12 (S.D.N.Y. Sept. 22, 2015)

(temporal proximity alone is not sufficient to establish knowledge "where there is no reason to infer that the individual who carried out the adverse action had knowledge of the protected activity or was acting pursuant to the instructions or encouragement of a superior with such knowledge. Plaintiff's allegation that Tiberi could have seen her overtime request is insufficient to plead actual knowledge.

Plaintiff has failed to sufficiently allege that the two individuals responsible for retaliatory acts against her had knowledge of Plaintiff's protected activity prior to the occurrence of the alleged retaliation or were acting on the order of someone with knowledge. Accordingly, Plaintiff has failed to state a claim for retaliation under Title VII.

## IV.    PLAINTIFFS' NYSHRL and NYCHRL CLAIMS ARE DISMISSED

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c) provides that a district court "may decline to exercise supplemental jurisdiction over a claim" if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 349–50 (1988)). Here, Plaintiff's claims under Title VII have been dismissed. Accordingly, judicial economy, fairness, convenience and comity will be served best

by declining to exercise supplemental jurisdiction over Plaintiffs' remaining state and city law claims. Plaintiffs' NYSHRL and NYCHRL claims are DISMISSED without prejudice.

## V.    CONCLUSION

Defendants' motion to dismiss the Verified Complaint, (ECF No. 16), is GRANTED. The Clerk of Court is directed to close the motion and the case accordingly.

Dated: New York, New York
      September 21, 2021

SO ORDERED.

_____
GEORGE B. DANIELS
United States District Judge